GRADY v. DIERKS LUMBER & COAL COMPANY.

Opinion delivered June 19, 1922.

1. CORPORATIONS—ABSTRACT INSTRUCTION.—In an action on an oral agreement to pay plaintiff for supplies furnished persons having a logging contract with defendant lumber company where the contract relied on was made by defendant's woods foreman, whose authority to make it was denied, refusal to submit the question of ratification by defendant was not error, in the absence of any proof that defendant or its authorized officers or agents knew of such contract.

2. FRAUDS, STATUTE OF—COLLATERAL UNDERTAKING—INSTRUCTION.—
In an action on an oral agreement to pay plaintiff for supplies
furnished persons having a logging contract with defendant, it
was not error to refuse to instruct to the effect that, if defend-
ant's promise to pay was the sole and inducing cause of the sale,
it would be an original undertaking and not within the statute,
since, if the contract was collateral, the statute applies, even
though it was the sole and inducing cause.

3. FRAUDS, STATUTE OF—COLLATERAL UNDERTAKING.—The fact that
defendant's agent only promised to stand for the account of a
third person, or to see the account paid, is not conclusive that
such promise is collateral, but in determining whether or not said
contract was original or collateral the jury should not only take
into consideration the words of the promise, but should consider
the intention of the parties at the time the contract was made,
the situation of the parties and all other facts and circumstances
surrounding the transaction.

4. FRAUDS, STATUTE OF—COLLATERAL AGREEMENT.—A contract to
"stand for" the debt of another, without anything else being
shown from which a different meaning may be inferred, makes
the contract collateral in form and within the statute.

Appeal from Sevier Circuit Court; *James S. Steel,*
Judge; affirmed.

*Johnson & Shaver,* for appellant.

The issues raised by the evidence were (1) the terms
of the contract, (2) whether or not McCurry had authori-
ty to make it, and (3) if he did not, whether or not de-
fendant by its acts and conduct ratified it.

Instructions 2-A, 3-A and 12, requested by the ap-
pellant, submitted the main issues in the case and should
have been given as well as instruction 4-A, which latter
instruction was intended only to give a definition of the
statute of frauds as construed by this court on former
appeal. 232 S. W. (Ark.) 23. Appellee's requested in-
struction No. 5 is in direct conflict therewith, and there-
fore erroneous. 215 S. W. (Ark.) 651.

The court erred in refusing to submit the question
of ratification. 96 Ark. 505.

It was palpable error to instruct the jury, as in
instruction three given for defendant, that "the mere
fact that defendant paid plaintiff on the accounts of

Sanders & McWhorter would not amount to a ratification, as proof of such payments made a question for the jury to decide as to whether or not they amounted to ratification.    96 Ark. 505; Art. 7, § 23, Const. 1874.    Instructions upon the weight of the evidence are erroneous. 43 Ark. 289; 45 *Id.* 165; *Id.* 292; 49 *Id.* 165; 53 *Id.* 381; 58 *Id.* 504.

Defendant's instruction is both incorrect as a declaration of law, and argumentative.    216 S. W. (Ark.) 18; *Id.* 1054; 82 Ark. 425; *Id.* 499; 120 *Id.* 1; 87 *Id.* 243; 124 *Id.* 588; 194 S. W. 873; *Id.* 510.

*Lake & Lake* and *Abe Collins,* for appellee.

The instruction 2-A requested by plaintiff was not only erroneous in assuming that McCurry was authorized to make the contract, but also in telling the jury that the alleged promise would be an original undertaking on defendant's part if its promise to pay for the goods was the sole and inducing cause of plaintiff's lending credit to the parties.    12 Ark. 174; 88 *Id.* 592; 102 *Id.* 435; 125 *Id.* 240.    Requested instructions which do not correctly state the law are properly refused.    19 Ark. 346; 20 *Id.* 583; 87 *Id.* 528; 92 *Id.* 6; 94 *Id.* 511.    Instructions 3-A and 4 were defective in the same way.    The issue is not what induced the sale, but to whom was the credit extended.

McCurry was a special agent with limited authority. Instruction 4 ignored that fact and erred in assuming that he was a general agent of appellee.    Persons dealing with him were bound to take notice of the limitations in his authority, and to ascertain what his real authority was.    140 Ark. 306.

Instructions requested by appellant on the question of ratification were properly refused, not only because they were abstract, but also because there was no proof showing, or tending to show, any knowledge on the part of appellee of the alleged contract between McCurry and appellant.    Authority of an agent either to make or ratify a contract so as to bind his principal will not be presumed, but must be proved.    132 Ark. 155; 14-A C.

J. 375, 376. Instruction 5 requested by appellee was a correct declaration of the law, for McCurry's agreement that appellee would stand for the men who made the accounts or would pay said accounts if the men did not, even if made, was within the statute of frauds. 125 Ark. 240; 113 *Id.* 542.

McCULLOCH, C. J. This is an action on account for merchandise sold and delivered, instituted by appellant Grady, as the successor of the firm of Holcomb & Grady, against appellee. The contention of appellant in the trial below was that the goods sold were delivered to Cheshire, Sanders & McWhorter, but that the credit was extended solely to appellee.

Appellee was engaged in the manufacture of lumber, and employed Cheshire, Sanders & McWhorter to haul logs from lands situated near the place of business of Holcomb & Grady.

McCurry was appellee's woods foreman, having supervision of the cutting and removal of timber, and appellant testified that McCurry, as agent for appellee, entered into an agreement with Holcomb & Grady to furnish supplies to the parties named on the credit of appellee, and the goods were to be charged to the parties to whom they were to be delivered, but bills were to be made out and presented to appellee periodically at its office and paid by appellee. This course of business was pursued for several months; the goods were charged to the parties to whom they were delivered, and later Holcomb & Grady made out bills showing the amount of merchandise furnished each party, and these bills were presented from time to time at appellee's office and checks given for the amount, payment being made out of sums due by appellee to the parties named.

Appellee denied that McCurry had any authority to enter into contract for the purchase of merchandise for the employees of the company, or for any one else, and also denied that McCurry made any such agreement to pay for the goods so furnished.

Appellee also pleaded that, if there was any contract made at all, it was within the statute of frauds, being a collateral undertaking to answer for the default of the parties named, and was not in writing.

The former trial of the case resulted in a verdict in favor of appellee, directed by the court, and on appeal to this court it was found that there was sufficient evidence to justify a submission of the issues to the jury, and the judgment was reversed and the cause remanded for a new trial. 149 Ark. 306. The case was tried again on remand to the lower court, the issues were submitted and the verdict was again in favor of appellee.

There was testimony, as in the former trial, sufficient to support a finding that McCurry, appellee's agent, entered into a contract with appellant's firm, as contended by him, for the sale of the goods on appellee's credit and delivery to Cheshire, Sanders & McWhorter.

Appellant requested several instructions submitting to the jury the question of McCurry's authority to bind appellee by such a contract, but all of those instructions were refused by the court except one, which was given. Several of the instructions given at the instance of appellee also submitted the issue of McCurry's authority. The instructions are numerous, and it is unnecessary to set them out, as we deem it sufficient to say that this issue was submitted in the instructions given, and there was no error in refusing appellant's instructions on that subject.

It is contended that the court erred in refusing to submit to the jury the question of ratification by appellee of McCurry's act in making the contract. We think that the court was correct, for the reason that there was no evidence of ratification. It is not shown that it was ever brought to the knowledge of any of appellee's authorized officers or agents that McCurry had entered into a contract in appellee's name for the purchase of merchandise. The most that is shown is that appellee paid the bills of Cheshire, Sanders & McWhorter out of their own earnings as the bills were presented from time to time by ap-

pellant. According to the undisputed evidence, the goods were charged on the books of Holcomb & Grady to the parties to whom they were delivered, and generally the bills were approved by those parties before being presented at appellee's office for payment. In the absence of proof of knowledge on appellee's part of McCurry's act in making the contract, all that it did was to pay the debts of Cheshire, Sanders & McWhorter out of their own earnings, and this did not constitute ratification of McCurry's unauthorized contract. It is elemental law that there is no ratification without knowledge of the facts, or such information as would lead to knowledge on the subject.

Since the jury found, or may have found under proper instructions, that McCurry had no authority to make the contract, it was not error for the court to refuse to submit the question of ratification, because, as before stated, there was no evidence of ratification if McCurry had no authority originally to bind appellee by such a contract.

The testimony adduced by appellee tended to show that McCurry was simply a woods foreman, with authority to direct the work of the men engaged in hauling, and that he had no authority to make contracts in appellee's name.

There are numerous other assignments of error with respect to rulings of the court in giving and refusing instructions concerning the effect of the contract between McCurry and Holcomb & Grady—whether it was an original undertaking to pay for the goods, or whether it was a collateral undertaking within the statute of frauds.

One of the instructions refused by the court, and which is the basis of counsel's argument for reversal. contains a statement of the law to the effect that if appellee's agent directed Holcomb & Grady to sell the goods in controversy "and that defendant's promise, if any, to pay for the goods, was the sole and inducing cause of plaintiff lending credit to the parties, then this would be an

original undertaking on the part of the Dierks Lumber & Coal Company," and would not be within the statute of frauds.

This statement was incorrect, and the court properly refused to make it in the instruction. If the undertaking was, in fact, a collateral one, the answer for the default of the parties who purchased the goods, the fact that the promise was the "sole and inducing cause" did not transform the contract into an original undertaking.

Appellant requested the court to give the following instruction, which the court modified by striking out the portion italicized and giving the remainder:

"The court instructs the jury that the mere fact, if you find it to be a fact, that defendant's agent, McCurry, only promised to stand for the accounts or to see the accounts paid, is not conclusive that such promise is collateral, but in determining whether or not said contract was original or collateral you should not only take into consideration the words of the promise, but you should consider the intention of the parties at the time the contract was made, the situation of the parties and all other facts and circumstances attending the transaction; *and if you determine from the evidence that defendant's promise, if any, was the sole and inducing cause of the sale, then the contract would be an original one and not collateral, and this is true notwithstanding you may find the actual words were that they would stand for the accounts or see the accounts paid.*"

It will be observed that this instruction as given by the court, inferentially at least, submitted the question of McCurry's authority, and it also correctly submitted the issues as to the character of the undertaking in accordance with the decision of this court on the former appeal. In fact, the instruction is almost identical with the language used in that opinion. There was no error in the modification, for the reason, already stated, that it expressed to the jury the idea that the reliance upon the promise as the sole and inducing cause was the test in

determining the character of the undertaking, whether collateral or original.

It is contended that the court erred in giving the following instruction at the request of appellee:

"You are instructed that, even though you may believe and find from the evidence that John McCurry, acting within the scope of his authority, agreed with the firm of Holcomb & Grady, or either of them, that the Dierks Lumber & Coal Company would stand for the men who made the accounts sued on or would pay said accounts if the men did not, your verdict must be for the defendant, for such contract would be within the statute of frauds and must be in writing and signed by some one authorized to sign by the defendant, before the defendant can be held bound thereby."

It is insisted that this instruction is in conflict with the other instruction just quoted and given at the instance of appellant. We do not think that there is any conflict between the two instructions, that they can be read together in perfect harmony, and when so read they declare the whole of the law on this phase of the case.

There is evidence from which the jury might have found that the only agreement made by McCurry was to "stand for" the persons who were purchasing goods. from Holcomb & Grady. Now the use of this term, without anything else being shown from which a different meaning may be inferred, makes the contract collateral in form, and if nothing else is shown to warrant a different interpretation it is a collateral and not an original undertaking. It was so held by this court in *Millsaps* v. *Nixon*, 102 Ark. 435. The case of *Pake* v. *Wilson*, 127 Ala. 240, is another case directly in point on that subject, and holds that the use of such a term is collateral in form, and in the absence of other attending circumstances it constitutes a collateral contract.

We are of the opinion that all of the issues properly went to the jury and that the evidence was sufficient to sustain the verdict.

Judgment affirmed.